**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ANTHONY D.,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:19-CV-2900-X-BK** |
| | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. §636(b) and *Special Order 3*, the Court issues these findings and recommended disposition of the parties' cross-motions for summary judgment. Upon review of the pleadings and applicable law, Plaintiff's *Motion for Summary Judgment with Supporting Memorandum of Law*, Doc. 21, should be **DENIED**, Defendant's motion for summary judgment, as construed from its *Response Brief*,[1] Doc. 22, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income benefits under the Social Security

---

[1] Though Defendant's filing is titled *Response Brief*, in the interest of judicial economy, the Court construes it as a cross-motion for summary judgment despite the fact that it was not filed in accordance with the instructions in the Court's scheduling order. Doc. 18 at 3; *see also* N.D. Tex. L. Rule 9.1(b) (requiring both parties to file summary judgment motions). Obviously, cross motions for summary judgment are necessary for the Court to issue a <u>final</u> ruling in this administrative appeal. This is far from the first time Defendant has filed a noncompliant pleading. Future noncompliance may result in the pleading being struck from the record.

Act ("the Act"). Doc. 21 at 7-8. Plaintiff filed his application for benefits on June 14, 2017, alleging he was disabled since February 13, 2013 due to a right hip injury, high blood pressure, depression, and diabetes. Doc. 20-1 at 203, 210, 260. At the administrative hearing, he amended his disability onset date to June 10, 2017. Doc. 20-1 at 16. Subsequently, the ALJ ruled Plaintiff was not disabled from June 10, 2017 through October 21, 2018, but was disabled after that period when, based on Plaintiff's age, the criteria used to evaluate his application changed. Doc. 20-1 at 27. After his request for review was denied, Doc. 20-1 at 6, Plaintiff appealed the decision to this Court. Doc. 1 at 1-2.

**B.    Relevant Facts**

Plaintiff was 53 years old on his disability onset date. Doc. 20-1 at 39. He has a high school education and past work experience as a janitor, furniture remover, pizza deliverer, school bus driver, and rental car mover. Doc. 20-1 at 39, 53-54.

Plaintiff's physical disability stemmed from a 2013 motor vehicle accident, in which he sustained multiple right-side rib fractures, a right hip dislocation, and an acetabular fracture. Doc. 20-1 at 577. Following surgery and therapy, Plaintiff was discharged for rehabilitation. Doc. 20-1 at 577, 597-99, 669-696. By the end of his rehabilitation, however, Plaintiff's right leg was still non-weightbearing. Doc. 20-1 at 718.

In January 2017, Plaintiff was seen by Dr. Ikechukwu Ofomata, M.D., of Metrocare Services. Doc. 20-1 at 462. Plaintiff, who had been diagnosed previously with major depressive disorder, reported that he was compliant with, and doing well on, his medication regimen and could complete his activities of daily living. Doc. 20-1 at 462. Dr. Ofomata noted that Plaintiff was adequately groomed, cooperative, alert, and oriented, with no sign of psychotic features, but

his remote memory was not intact, and his attention/concentration was impaired.  Doc. 20-1 at 462-466.  Dr. Ofomata diagnosed Plaintiff as "stable/improved."  Doc. 20-1 at 466-467.

At a follow-up visit in September 2017, Plaintiff reported he was still depressed and could not be around people due to anger and irritability but had been out of his medications for several months.  Doc. 20-1 at 499, 503.  Plaintiff was continued on a previous medication and given a new prescription.  Doc. 20-1 at 503.

In May of 2018, Metrocare advanced practice nurse John G. Muturi saw Plaintiff and concluded his remote memory was still not intact and his attention and concentration were still impaired.  Doc. 20-1 at 901.  Plaintiff reported that he had been compliant with his medications and acknowledged that they were effective in treating his mood.  Dr. Ikechukwu Ofomata, M.D. filled out a form assessing Plaintiff's mental ability to do work-related activities in June 2018 and opining about the many issues Plaintiff would have in the workplace.  Doc. 20-1 at 913-915 (e.g., an extreme loss in  his ability to maintain attention for two hours or more, accept instructions, cope with work stress, or get along with coworkers).

In September 2018, Colten Mabile, D.O., stated in interrogatories that Plaintiff's hip impairment produced pain and that he used a cane to walk.  Doc. 20-1 at 925-926.

### C.    The ALJ's Findings

The ALJ found Plaintiff disabled beginning October 22, 2018, but not disabled before that date.  Doc. 20-1 at 27.  The ALJ determined Plaintiff had the severe impairments of status post open reduction internal fixation of the right posterior column, posterior wall acetabular fractures, removal of loose bodies, open reduction of posterior hip dislocation, diabetes mellitus, hypertension, and major depressive disorder.  Doc. 20-1 at 19.  Nevertheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments from June 10, 2017 through

October 21, 2018 that met or medically equaled one of the listed impairments. Doc. 20-1 at 20, 27. The ALJ further determined that during that period, Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with a variety of mental limitations. Doc. 20-1 at 21-22. And, while concluding Plaintiff was unable to perform any past relevant work since his car accident on February 13, 2013, Doc. 20-1 at 25, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed prior to October 22, 2018, the eve of Plaintiff's 55th birthday. Doc. 20-1 at 26. However, effective October 22, 2018, and as analyzed under Plaintiff's new age category, the Medical-Vocation Rules directed a finding of disability based on the ALJ's RFC. Doc. 20-1 at 27. Thus, the ALJ determined that Plaintiff was disabled as of that date. Doc. 20-1 at 26-27.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step inquiry to determine whether a claimant is disabled:

(i)      an individual who is working and engaging in substantial gainful activity is not disabled;

(ii)     an individual who does not have a "severe impairment" is not disabled;

(iii)    an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors;

(iv)    if an individual is capable of performing his past work, a finding of "not disabled" must be made;

(v)    if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and

4

residual functional capacity must be considered to determine if any other work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner cannot make such a showing, the claimant should be found to be disabled. *Id.* The Commissioner's burden under step five may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to (1) whether the Commissioner's position is supported by substantial evidence, and (2) whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla but less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner; instead, it only scrutinizes the record to determine whether substantial evidence exists to support the decision made. *Greenspan*, 38 F.3d at 236. The evidence may preponderate in the claimant's favor but still substantially support the Commissioner's findings.

*See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). If substantial evidence supports the Commissioner's decision, the decision should be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

When considering the parties' summary judgment arguments, the Court has relied on the parties' citations to the supporting evidence of record. The Court is not obligated to independently probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ANALYSIS

Plaintiff argues the Commissioner's determination that he was not disabled prior to October 22, 2018 should be reversed because the ALJ's RFC finding is not supported by substantial evidence because the ALJ discredited every medical opinion of record that addressed Plaintiff's impairments. Doc. 21 at 19-20. He insists the ALJ's findings are not support by substantial evidence because the ALJ (1) improperly relied on her own lay interpretation of the medical data for her RFC finding, Doc. 21 at 22, and (2) rejected the treating physician's medical opinion without explaining why she did so. Doc. 21 at 25-26. Defendant argues that the ALJ properly evaluated the evidence and medical opinions and sufficiently explained her decision. Doc. 22 at 3.

### a) Residual Functional Capacity

The RFC is the most a claimant can do despite their limitations. 20 C.F.R. §§ 404.1545, 416.945(a)(1). It is an administrative assessment made by the ALJ based on the totality of the evidence in the record. 20 C.F.R. §§ 404.1545, 404.1560, 416.945(a)-(e), 416.946. When making the assessment, the ALJ should consider medical assessments, descriptions by physicians, descriptions by the claimant, and any other evidence that shows any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). The ALJ is to resolve any conflicts in the medical evidence after evaluating the record. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Moreover, any subjective complaints of disability must be at least partly corroborated by objective medical evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

This RFC determination is the sole responsibility of the ALJ and is not to be confused with a medical opinion. *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When determining a claimant's RFC, the ALJ is free to incorporate as many or as few limitations as she finds is consistent with the record. *Andrews v. Astrue*, 917 F.Supp.2d 624, 642 (N.D. Tex. Jan. 9, 2013). Crucially, the reviewing court should not confuse an ALJ's *interpretation* of the medical evidence to determine a claimant's RFC with an ALJ's *substitution* of her own opinion for that of a medical professional. 706 F.3d at 603.

In determining Plaintiff's RFC in this case, the ALJ stated that she "considered all symptoms, the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence," such as opinion evidence, as required by the Code of Federal Regulations. Doc. 20-1 at 22. The ALJ determined that while Plaintiff's

impairments could reasonably be expected to result in some level of limitations, the record does not support the degree of functional limitation alleged. Doc. 20-1 at 25. The ALJ also noted that when Plaintiff was compliant with his treatments, his symptoms improved. Doc. 20-1 at 25.

The determinations by the state agency medical consultants support this opinion. Dr. Rosenstock and Dr. O'Callaghan found that Plaintiff's dysfunctions were non-severe impairments. Doc. 20-1 at 69, 78. Dr. Rehman determined that Plaintiff retained the ability to lift and/or carry 50 pounds, had unlimited ability to push and pull, could stand and/or walk for a six hours out of an eight hour workday, and sit for the same. Doc. 20-1 at 91. Further, Dr. Germain, relying on treatment records, noted that Plaintiff could remember simple instructions, make simple decisions, concentrate for extended periods, interact adequately with co-workers, and respond to changes in routine work settings. Doc. 20-1 at 94. While a 2018 assessment indicated that Plaintiff had at least substantial loss in most work-related mental health categories, the ALJ juxtaposed this with Plaintiff's own acknowledgment that medications effectively treated his pain. Doc. 20-1 at 913-915. The ALJ's analysis is consistent with treating physician Dr. Mabile's opinion that Plaintiff's impairments could be expected to produce pain but not a specific limitation. Doc. 20-1 at 925.

Moreover, the ALJ's physical limitation findings were greater than those determined by any physician source in the record. *See* Doc. 20-1 at 24. The ALJ fully incorporated Plaintiff's history of a motor vehicle accident, his hip replacement, diabetes, depression, and other limitations and substantially limited Plaintiff's RFC on that basis. Doc. 20-1 at 23-24. The ALJ is only required to consider, not required to accept, the medical opinion evidence. *See* 20 C.F.R. § 404.1520c. *See also Ripley*, 67 F.3d at 557 (the RFC determination is the sole responsibility of the ALJ). Under these facts, the Court concludes that the ALJ did not improperly substitute her

lay opinion for that of a medical professional and only interpreted and weighed the evidence. Thus, the ALJ's RFC finding and the finding that Plaintiff was not disabled before October 22, 2018, are supported by substantial evidence.

### b) Required Explanation

Plaintiff next argues this case should be remanded because the ALJ did not sufficiently explain why Dr. Mabile's medical opinion was discounted. Doc. 20-1 at 25. While the ALJ must explain how she considered the supportability and consistency factors for a medical source's medical opinions, there are no magic words or specific amount of explanation required. 20 C.F.R. § 404.1520c(b)(2); *see Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, *7 (N.D. Tex. December 4, 2020) (Ramirez, J.) (The Court found that the ALJ sufficiently explained his decision when the decision reflected consideration of supportability and consistency and noted differences between the specific medical opinion and the overall medical evidence.). Details about why the ALJ gave a specific opinion little weight, combined with the entire review and analysis of the objective record, can satisfy the ALJ's duty under the regulations. *Id.*

The ALJ's opinion reflects that she considered Dr. Mabile's responses but gave Dr. Mabile's opinion little weight because it did not provide specific functional limitations. Doc. 20-1 at 23. Dr. Mabile even admitted he was unable to accurately assess how Plaintiff's medical condition would prevent him from standing/walking. Doc. 20-1 at 926. Further, the ALJ explained there was a discrepancy in Plaintiff's cane use—2017 records showed no use of a cane despite the fact that the cane was central to Dr. Mabile's opinion. Doc. 20-1 at 24. Based on the foregoing, the Court finds the ALJ's explanation for rejecting Dr. Mabile's opinion was sufficient and in accordance with the cited regulation.

## IV. CONCLUSION

Plaintiff's *Motion for Summary Judgment*, Doc. 21, should be **DENIED**, Defendant's

*Response Brief*, construed as a motion for summary judgment, Doc. 22, should be **GRANTED**

and the Commissioner's decision **AFFIRMED**.

**SO RECOMMENDED** on August 25, 2021.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).